Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| CENTRO MÉDICO DEL TURABO INC. H/N/C HIMA SAN PABLO FAJARDO<br><br>**RECURRIDO**<br><br>v.<br><br>TRIPLE-S SALUD, INC.<br><br>**PETICIONARIO** | KLCE202300378<br>KLCE202300453<br>KLCE202300469 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso núm.: SJ2023CV00834 (906) SJ2022CV08198 (908) SJ2023CV00867 (908)<br><br>Sobre: Cobro de Dinero Regla 60 de las Reglas de Procedimiento Civil 2009, según enmendada |

Panel integrado por su presidente, el Juez Figueroa Cabán, la Jueza Grana Martínez y el Juez Rodríguez Flores.

Grana Martínez, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 31 de mayo de 2023.

La peticionaria, Triple-S Salud, Inc., solicita que revisemos la denegatoria del Tribunal de Primera Instancia a convertir al procedimiento ordinario, los casos que el Centro Médico del Turabo presentó en su contra al amparo de la Regla 60 de Procedimiento Civil, 32 LPRA Ap. V. Además, cuestiona la denegatoria del Tribunal de Primera instancia a consolidarlos.

La aseguradora ha traído ante nuestra consideración los recursos KLCE202300378, KLCE202300453 y KLCE202300469 sobre el mismo asunto. El 26 de mayo de 2023, ordenamos la consolidación de los tres recursos en el ejercicio de la autoridad conferida en la Regla 80.1 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, y de acuerdo con los criterios de la Regla 38.1 de Procedimiento Civil. 32 LPRA Ap. V.

Número Identificador

SEN2023_____

El recurrido, Centro Médico del Turabo, presentó su oposición en los recursos KLCE202300378 y KLCE202300469. No obstante, no presentó oposición en el KLCE202300453, en el término concedido.

## I.

Los hechos procesales pertinentes para atender y resolver este recurso son los siguientes.

El 30 de enero de 2023, el recurrido presentó la demanda correspondiente al KLCE202300378, basada en una reclamación de cobro de dinero al amparo de la Regla 60 de Procedimiento Civil, 32 LPRA Ap. V. El Centro Médico solicitó al TPI que ordenara a la peticionaria a pagarle la cantidad de $10,374.20 por los servicios médicos ofrecidos a la paciente YMR desde el 30 de enero de 2018 al 7 de febrero de 2018. El recurrido adujo que la paciente era beneficiaria del plan Triple-S Advantage y la aseguradora se negaba a pagar los servicios prestados.

El Centro Médico del Turabo también presentó ese día la demanda correspondiente al recuso KLCE202300469, al amparo de la Regla 60, *supra.* El recurrido alegó que Triple-S le debía mil ciento cuarenta y cinco dólares con treinta y cinco centavos ($1,145.35) por los servicios ofrecidos a otro paciente del 22 al 28 de enero de 2018.

El 13 de septiembre de 2022, el recurrido presentó otra demanda contra Triple-S al amparo del procedimiento sumario de la Regla 60, *supra.* El Centro Médico del Turabo alegó que la aseguradora le adeudaba siete mil quinientos dólares ($7,500.00) por los servicios médicos ofrecidos a un paciente del 1 al 11 de marzo de 2018.

La peticionaria alegó en todos los casos que, el procedimiento debía convertirse en ordinario, porque el recurrido pretendía fragmentar una reclamación de millones de dólares, compleja y

altamente técnica. Triple-S argumentó que el recurrido intentaba evitar el descubrimiento de prueba porque sabía que su reclamo no tenía méritos. La aseguradora arguyó que el Centro Médico presentó múltiples demandas porque estaba en desacuerdo con la revisión de las facturas del contrato del año 2018. Triple-S argumentó que el 18 de marzo de 2022 le informó al recurrido que realizó el proceso alterno acordado y que únicamente procedía el pago de unos dos millones cuatrocientos cincuenta y nueve mil trescientos veinte y cinco dólares con setenta centavos ($2,459,325.70). La peticionaria alegó que el recurrido facturó por servicios que había pagado y por otros que no procedían contractualmente.

Triple-S sostuvo que el recurrido presentó las reclamaciones individualmente, pero todas surgen de los mismos hechos y de la misma relación contractual. La aseguradora adujo que la controversia no debe resolverse sumariamente, porque el tribunal tiene que hacer una determinación sobre miles de facturas. La peticionaria sostuvo que evaluó las reclamaciones conforme al proceso interno de revisión acordado contractualmente y que las facturas fueron objeto de varios años de negociaciones, en los que le adelantó cinco millones ochocientos mil dólares ($5,800,000.00) al recurrido. Finalmente, alegó que es el recurrido el que le adeuda dinero a Triple-S por los adelantos recibidos, y que es necesario realizar un descubrimiento de prueba, debido a que existe controversia sobre la cuantía reclamada y la complejidad de la relación contractual.

El Centro Médico del Turabo adujo que la peticionaria pretendía dilatar el pago de la reclamación sometida desde el año 2018 y que el Tribunal de Apelaciones se negó a ordenar la consolidación. El recurrido alegó que Triple-S no justificó la necesidad de convertir el procedimiento a ordinario, porque no demostró que tiene una reclamación sustancial y que no existe un

interés de justicia que lo amerite. Por último, alegó que no se justifica que Triple-S pretenda descubrir prueba sobre las razones por las que denegó el pago.

La aseguradora estipuló en la vista realizada en el SJ2023CV00834 que, el Centro Médico prestó sus servicios individualmente a cada paciente. No obstante, alegó que ambas partes acordaron que la facturación seria por año contrato y que le envió un correo electrónico al recurrido con evidencia de que había pagado algunas de las facturas. Además, alegó que la controversia era sumamente compleja y que procedía la consolidación para evitar decisiones inconsistentes.

Durante esa vista, el recurrido alegó que su reclamo es por una deuda menor de quince mil dólares ($15,000.00) y que la aseguradora le instruyó a someter cada caso individualmente. El Centro Médico del Turabo adujo que Triple-S presentó una carta con fecha del 18 de marzo de 2022, en la que aceptó la deuda y realizó un adelanto de pago sujeto a reconsideración.

El 8 de marzo de 2023, el TPI declaró No Ha Lugar la solicitud de Triple-S de convertir el procedimiento a ordinario en el caso SJ2023CV00834 que originó el KLCE202300378. El foro recurrido concluyó que fue la aseguradora la que instruyó al recurrido a realizar un proceso interno individual y no conjuntamente.

El 20 de abril de 2023, el TPI declaró por separado NO HA LUGAR las mociones de desestimación que Triple-S presentó en el caso SJ2022CV08198 que originó el KLCE202300453 y en el caso SJ2023CV00657 que originó el recurso KLCE202300469. El TPI declaró NO HA LUGAR, la solicitud de desestimación por insuficiencia en el diligenciamiento del emplazamiento, la solicitud de consolidación y la solicitud de convertir el caso al procedimiento ordinario.

La peticionaria alega en los recursos consolidados que:

ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANIA (TPI) AL DENEGAR LA SOLICITUD DE CONVERSIÓN DEL PROCEDIMIENTO SUMARIO, BAJO LA REGLA 60 DE LAS DE PROCEDIMIENTO CIVIL, *SUPRA,* A UNO ORDINARIO AUN CUANDO LA ALEGADA DEUDA NO ES LÍQUIDA NI EXIGIBLE, POR EXISTIR ENTRE LAS PARTES CONTROVERSIAS RESPECTO A SU CUANTÍA, LA CUAL ES PARTE DE UN PAQUETE DE RECLAMACIONES DEL DEMANDANTE RECURRIDO, QUE EXCEDE LA CANTIDAD DE $15,000.00 Y QUE REQUIERE DE UN AMPLIO DESCUBRIMIENTO DE PRUEBA.

## II.

### A.

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior. 32 LPRA sec. 3491; *Caribbean Orthopedics Products of Puerto Rico, LLC v. Medshape, Inc.*, 207 DPR 994, 1004 (2021); *IG Builders v. BBVAPR,* 185 DPR 307, 337 (2012); *García v. Padró,* 165 DPR 324, 334 (2005). La discreción judicial se ha definido como la autoridad para elegir entre diversas opciones sin enajenarnos del derecho. Los tribunales deben ejercer su discreción de forma razonable al momento de pasar juicio sobre una controversia para así poder llegar a una condición justiciera. *IG Builders v. BBVAPR,* supra, pág. 338; *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 98 (2008); *García v. Padró,* supra, págs. 334–335.

La Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, dispone que:

El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

**B.**

El texto de la Regla 60 de Procedimiento Civil, 32 LPRA Ap. V,

es el siguiente:

Cuando se presente un pleito en cobro de una suma que no exceda los quince mil (15,000) dólares, excluyendo los intereses, y no se solicite en la demanda tramitar el caso bajo el procedimiento ordinario, la parte demandante deberá presentar un proyecto de notificación-citación que será expedido inmediatamente por el Secretario o Secretaria. La parte demandante será responsable de diligenciar la notificación-citación que será expedido inmediatamente por el Secretario o Secretaria. La parte demandante será responsable de diligenciar la notificación-citación dentro de un plazo de diez (10) días de presentada la demanda, incluyendo copia de esta, mediante entrega personal conforme a lo dispuesto en la Regla 4 o por correo certificado.

La notificación-citación indicará la fecha señalada para la vista en su fondo, que se celebrará no más tarde de los tres (3) meses a partir de la presentación de la demanda, pero nunca antes de quince (15) días de la notificación a la parte demandada. En la notificación se advertirá a la parte demandada que en la vista deberá exponer su posición respecto a la reclamación, y que si no comparece podrá dictarse sentencia en rebeldía en su contra.

La parte demandante podrá comparecer a la vista por sí o mediante representación legal. El tribunal entenderá en todas las cuestiones litigiosas en el acto de la vista y dictará sentencia inmediatamente. Como anejo la demanda, el demandante podrá acompañar una declaración jurada sosteniendo los hechos contenidos en la demanda o copia de cualquier otro documento que evidencie las reclamaciones de la demanda. Si la parte demandada no comparece y el tribunal determina que fue debidamente notificada y que le debe alguna suma a la parte demandante, será innecesaria la presentación

de un testigo por parte del demandante y el tribunal dictará sentencia conforme a lo establecido en la Regla 45. Si se demuestra al tribunal que la parte demandada tiene alguna reclamación sustancial o en el interés de la justicia, cualquiera de las partes tendrá derecho a solicitar que el pleito se continue tramitando bajo el procedimiento ordinario prescrito por estas reglas o el tribunal podrá motu proprio ordenarlo, sin que sea necesario cancelar la diferencia en aranceles que correspondan al procedimiento ordinario.

Para la tramitación de un pleito conforme al procedimiento establecido en esta Regla, la parte demandante debe conocer y proveer el nombre y la última dirección conocida de la parte demandada al momento de la presentación de la acción judicial. De lo contrario, el pleito se tramitará bajo el procedimiento ordinario.

El propósito primordial de la Regla 60 es agilizar y simplificar los procedimientos en acciones de reclamaciones de cuantías pequeñas. Así se facilita el acceso a los tribunales y una justicia más rápida, justa y económica. Las Reglas de Procedimiento Civil aplican supletoriamente, siempre que no sean incompatibles con el procedimiento sumario. El emplazamiento por edicto, la contestación a la demanda, el descubrimiento de prueba, las reconvenciones, la demanda contra terceros, entre otros, son incompatibles con el procedimiento sumario de la Regla 60. *RMCA v. Mayor Bianchi,* 208 DPR 100, 107-108 (2021); *Cooperativo v. Hernández Hernández,* 205 DPR 624, 630-631 (2020).

El propio texto de la Regla 60, *supra,* permite que cualquiera de las partes solicite que el pleito continue tramitándose de forma ordinaria. El tribunal también puede hacerlo motu proprio. La conversión del caso a uno ordinario no es automática. El tribunal tiene que sopesar sus méritos. El litigio puede convertirse en ordinario si: (1) el demandado demuestra que tiene una reclamación sustancial, (2) cuando las partes solicitan en el interés de la justicia que el pleito se ventile de forma ordinaria, (3) el tribunal tiene discreción para ordenarlo motu proprio, en el interés de la justicia y (4) la demandante no conoce ni provee el nombre y dirección del

deudor, (5) es necesario emplazar por edictos. *RMCA v. Mayor Bianchi,* supra*,* pág. 108; *Cooperativo v. Hernández Hernández,* supra, pág. 638.

Las únicas deudas que pueden reclamarse judicialmente son las vencidas, líquidas y exigibles. Una deuda es líquida porque es cierta y determinada y exigible, debido a que puede demandarse su cumplimiento. El demandante que expone que una deuda es líquida y exigible está dando por hecho que el deudor aceptó la cuantía como correcta y que la deuda está vencida. El promovente de un pleito al amparo de la Regla 60 tiene que demostrar que la deuda que reclama es líquida, vencida y exigible. El demandado puede requerir la conversión del proceso a ordinario cuando el derecho de cobro no es claro y es necesario descubrir prueba, se tiene una reconvención compulsoria o se necesita añadir un tercero demandado. *RMCA v. Mayor Bianchi,* supra, págs. 108-109.

El descubrimiento de prueba garantiza el cumplimiento de la garantía constitucional al debido proceso de ley. Los mecanismos de descubrimiento de prueba deben estar disponibles en todo pleito que pueda privar a una persona de su propiedad o libertad. El propósito del descubrimiento de prueba es garantizarles a los litigantes la oportunidad de estar adecuadamente preparados cuando el caso se vea en sus méritos. Un efectivo descubrimiento de prueba evita los inconvenientes, sorpresas e injusticias que surgen cuando los litigantes ignoran los hechos en controversia. La tendencia existente en el procedimiento civil es facilitar el descubrimiento de prueba de forma tal que el juzgador esté en la mejor posición para resolver justamente. *RMCA v. Mayor Bianchi,* supra, págs. 112-113.

**C.**

La Regla 38.1 de Procedimiento Civil, 32 LPRA Ap. V, permite la consolidación de pleitos que comprendan cuestiones comunes de

hecho o de derecho. El tribunal podrá ordenar una sola vista o juicio sobre cualquiera o todas las cuestiones litigiosas comprendidas en dichos pleitos. Igualmente, podrá ordenar la consolidación de todos los pleitos y dictar órdenes que eviten gastos o dilaciones innecesarias.

El propósito principal de la consolidación es evitar la proliferación de las causas de acción entre las mismas partes, lograr la economía e impedir la indeseable probabilidad de fallos incompatibles sobre un mismo asunto. *Crespo Quiñones v. Santiago Velázquez,* 176 DPR 408, 415-416 (2009). Los jueces tienen discreción para determinar si procede la consolidación. *Meléndez Vega v. Caribbean Intern. News,* 151 DPR 649 (2000).

El juzgador debe evaluar si la consolidación contribuye a una resolución justa, rápida y económica y si evita resultados inconsistentes entre disputas que presentan cuestiones similares de hechos y derecho. Los tribunales también han considerado los perjuicios que la consolidación puede ocasionar a los litigantes y al sistema de impartir justicia. Además de evaluar la posibilidad de que los perjuicios no puedan evitarse mediante órdenes cautelares, prestando especial atención a las circunstancias particulares del caso. La consolidación promueve la buena administración de la justicia, la aceleración de disputas y la reducción de los costos de la litigación. *Vives Vázquez v. ELA,* 142 DPR 117, 136 (1996).

La posibilidad de perjuicios necesariamente no impide la consolidación. El tribunal deberá hacer un balance de los intereses involucrados y ponderar si existe un perjuicio real, versus el interés de lograr una solución justa, rápida y económica. Igualmente, tiene que considerar si las órdenes cautelares pueden evitar los efectos perjudiciales de la consolidación. La etapa procesal en la que se solicita la consolidación es importante. La complejidad del caso es otro asunto a considerar, porque la consolidación es utilizada para

atender adecuadamente los casos complejos. *Vives Vázquez v. ELA,* supra, págs. 137-138.

La decisión de consolidar requiere medir todas las consideraciones a su favor y en su contra. El tribunal debe prestar atención particular a los hechos ante su consideración y su relación con todos los casos que se solicita que sean consolidados. La determinación descansa en la sana discreción del juez de instancia, ejercida a base de la totalidad de las circunstancias que están presentes en los casos cuya consolidación se solicita. El tribunal revisor, dará gran deferencia a la decisión del juez de instancia. La deferencia solo será obviada, cuando se omitió considerar algún factor importante o el tribunal abusó de su discreción. *Vives Vázquez v. ELA,* supra, págs. 137, 139, 142.

La determinación judicial inicial sobre una solicitud de consolidación merece gran deferencia, cuando está basada en un análisis ponderado de la totalidad de las circunstancias de los casos cuya consolidación se solicita. *Hospital San Francisco v. Srio. de Salud,* 144 DPR 586, 594 (1997).

### III.

La peticionaria alega que el TPI erró al negarse a tramitar los casos que originaron los recursos consolidados, mediante el procedimiento civil ordinario.

Triple-S sostiene que el recurrido no tiene una causa de acción al amparo de la Regla 60, *supra*, porque no existe una deuda líquida, vencida y exigible. La aseguradora aduce que, la cuantía de la supuesta deuda no está clara, y que el recurrido pretende cobrar por servicios que fueron pagados y por otros cuyo pago no procede. Por último, arguye que es el recurrido el que le adeuda dinero, debido a que recibió un adelanto de pago.

Según Triple-S, la Regla 60, *supra,* no aplica porque la controversia está basada en un asunto de interpretación

contractual. La aseguradora argumenta que la controversia versa sobre cuál es el método de facturación acordado por las partes y si procede el pago de algunos de los servicios facturados. Triple-S alega que revisó las facturas por año servicio conforme a lo pactado, pero el recurrido utiliza el procedimiento sumario para burlar ese acuerdo y poder cobrar por el servicio ofrecido a cada paciente individualmente. La peticionaria arguye que es necesario que el caso se ventile por la vía ordinaria para que se garanticen sus derechos al debido proceso de ley, a presentar una reconvención y a descubrir prueba que demuestre que el recurrido no tiene una causa de acción y que le adeuda dinero a la aseguradora.

El Centro Médico del Turabo alega que tiene un contrato independiente por cada paciente y que la propia Triple-S lo instruyó a presentar las facturas individualmente.

Nos corresponde determinar, si la controversia está basada en una deuda líquida, vencida y exigible de quince mil dólares ($15,000.00) o menos, o en el método de facturación acordado.

La parte peticionaria tiene razón, la expedición del recurso es necesaria porque en el expediente hay prueba suficiente para concluir que existe controversia sobre la veracidad de la deuda y su cuantía. El recurrido no ha establecido que tiene derecho a cobrar una deuda vencida, líquida y exigible al amparo de la Regla 60, *supra*. El Centro Médico del Turabo no puede alegar que la deuda está vencida, líquida y exigible, cuando es evidente que existe controversia sobre el método de facturación pactado. La aseguradora sostiene que la facturación debe ser por el año del contrato, mientras que el Centro Médico del Turabo alega que debe ser por paciente. Esta controversia incide directamente sobre la demanda del recurrido e imposibilita que el caso se tramite al amparo de la Regla 60, *supra.*

La etapa en que se encuentra el caso es la más propicia para intervenir y frenar la gran cantidad de litigios al amparo de la Regla 60, *supra,* que congestionan las salas del tribunal. Nuestra intervención evita que continúen las decisiones inconsistentes sobre la misma controversia, ya que en algunos se ha permitido la conversión al proceso ordinario. Otros casos han continuado al amparo de la Regla 60, *supra,* y existen otros en los que el tribunal no se ha expresado. La expedición del recurso lejos de fragmentar los procedimientos y ocasionar dilaciones innecesarias, pone fin a la controversia sobre la procedencia del trámite sumario de la Regla 60, *supra.*

Por último, nuestra intervención evita un fracaso de la justicia, porque la Regla 60, *supra,* impide que la peticionaria ejerza su derecho al debido proceso de ley. Triple-S no tendría oportunidad de descubrir prueba, ni de presentar una reconvención.

El TPI erró al dar por hecho que Triple-S instruyó al recurrido a facturar por los servicios ofrecidos a cada paciente individualmente. El expediente incluye evidencia de que se facturó de forma global por los servicios ofrecidos en el año 2018 y no por cada paciente atendido en ese año. La carta enviada por el recurrido a la aseguradora el 9 de abril de 2021 estable lo contrario. Véase, pág. 36. El Centro Médico escribió lo siguiente:

> En vías de buscar una solución, se preparó una compilación de todas las facturas lo cual queremos someter por año de servicio con el objetivo de simplificar el proceso y que sea más manejable de trabajar.
>
> Actualmente se realizó un proceso de verificar, contra historiales de pagos de Triple-S las facturas pendientes de pago para el año 2018. Tenemos todas las facturas impresas con la evidencia requerida, incluyendo el resumen de su historial de pago. A continuación, le presento un resumen que refleja lo que Triple-S le adeuda a HIMA San Pablo.

El recurrido incluyó una tabla en la que la deuda se facturó por el año 2018 y que ascendió a $6,281,972.72. Del documento es

evidente que el recurrido no facturó por paciente, sino por año de servicio. El recurrido admitió en la misiva que la controversia es compleja, debido a la naturaleza del servicio que se ofrece y a la cantidad de facturas procesadas mensualmente.

El 12 de noviembre de 2021, las partes otorgaron un ACUERDO DE ADELANTO DE PAGO. Véase, pág. 39 del apéndice. Triple-S adelantó el pago de las reclamaciones nuevas y pendientes de las líneas de negocio Triple-S Comercial, Medical Advantage y Plan de Salud del Gobierno. No obstante, las partes acordaron que la aseguradora obtendría el repago de las reclamaciones presentadas para pago. Ambas pactaron textualmente que:

> En consideración a este adelanto de pago de reclamaciones y para que Triple-S pueda identificar eficazmente los balances reclamados por el Hospital, el Hospital enviará a Triple-S el detalle de las reclamaciones por fecha de envejecimiento (aging) de cada una de las tres (3) líneas de negocio, cuyas fechas de servicio sean de los años calendarios **2018** a 2020, siguiendo en formato ya provisto por Triple-S para el proceso de reconsideración que hemos estado realizando. El Hospital se compromete al someter los mismos y completar el cierre del año de servicio 2018 en o antes del 31 de diciembre de 2021. (Énfasis nuestro).

Las partes otorgaron otro contrato de pago por adelantado por los servicios prestados entre el 1 de enero de 2019 y 30 de junio de 2021. Véase, pág. 41 del apéndice.

La carta que Triple-S envió el 18 de marzo de 2022 es otra razón para concluir que las partes acordaron facturar por año de servicio. La aseguradora informó al recurrido que analizó todas las reclamaciones del año 2018 sometidas a reconsideración y conducente al cierre del período. La peticionaria advirtió que el proceso se realizó en coordinación con el equipo del Centro Médico del Turabo y de acuerdo con el plan de trabajo acordado. Triple-S reconoció una deuda de $2,458,325.70, pero le restó el adelanto de pago que hizo al recurrido. Luego de esa resta, estimó la deuda en $959,226.70. La aseguradora informó al recurrido que podía apelar

mediante los mecanismos de resolución de disputas establecidos en el Manual del Proveedor. El recurrido fue advertido de que el Primer Panel Apelativo evaluaría toda la información y documentos incluidos con la solicitud de apelación. Véase, pág. 44 del apéndice.

El recurrido alegó que el Adelanto de Pago se concedió por los servicios prestados entre el 1 de enero de 2019 y 30 de junio de 2021. Véase, pág. 45 del apéndice. El Centro Médico reclamó ante el Primer Nivel de Apelación de Triple-S el pago de $10,373.20 por los servicios provistos a un solo paciente. El Centro alegó que:

6. La Notificación **se envió de manera globalizada** para todas las líneas rechazadas para pago, pero también se incluyeron líneas no rechazadas para pago, sino inconclusas y líneas que se identifican como pendientes de consulta. Es evidente que el proceso de cerrar la revisión estuvo atropellado y que existen numerosas líneas que no estaban maduras para la Notificación sobre cierre y derecho de apelación. Este proceder es abusivo y descuidado y hacerlo de manera globalizada tiene el efecto de obligar al proveedor a someter apelaciones para asuntos no resueltos por Triple-S. La Notificación es defectuosa para todas las líneas que no han sido pagadas, sin que se haya informado la razón para la falta de pago o que se hayan identificado como que están pendientes de consulta.

7. **No existen acuerdos formales vigentes entre las partes, por lo que el proveedor** no está obligado a cumplir con el proceso de apelación adoptado unilateralmente por Triple-S. (Énfasis nuestro).

Véase, pág. 16 del apéndice.

El Primer Foro Administrativo Apelativo se reafirmó en la decisión emitida por los servicios ofrecidos del 1 de enero de 2018 al 30 de marzo de 2018. Véase, pág. 22 del apéndice.

El 9 de junio de 2022, Triple-S informó al recurrido que cobró el adelanto de pago realizado el 23 de noviembre de 2021 de los $958,226.70 que le correspondía recibir por los servicios del año 2018. No obstante, le advirtió que todavía tenía una deuda de $3,340,674.30 por el adelanto que recibió el 23 de noviembre de 2021. Véase, pág. 46 del apéndice.

El 28 de junio de 2022, el recurrido acudió al Segundo Foro Apelativo de Triple-S. Dicho foro le informó que se reunió con su personal y le aclaró las razones específicas de la decisión emitida en cada uno de los casos trabajados durante el proceso de reconciliación. Además, le contestó que la información sobre la reconciliación consta en correos electrónicos y le recordó que ambas acordaron los mecanismos de notificación. Véase, pág. 24 del apéndice.

La evidencia documental nos convence de que el recurrido no ha cumplido con la carga procesal que exige la Regla 60, *supra.* El Centro Médico no ha demostrado que tiene derecho a reclamar el pago de una deuda vencida, líquida y exigible. Tampoco existe evidencia de que la peticionaria aceptó la deuda. Por el contrario, son evidentes sus cuestionamientos a la existencia de la deuda. La prueba documental nos deja claro que la controversia real está basada en el método de facturación que acordaron las partes. La carta que la recurrida envió a la aseguradora el 9 de abril de 2021 genera controversias sobre el método de facturación acordado. El proceso ante el Primer y Segundo Nivel Apelativo de Triple-S nos obliga a hacer la misma conclusión. El recurrido aceptó que la notificación relacionada a todas las líneas rechazadas para pago se envió de forma globalizada. Véase, pág. 16 del apéndice.

Por otro lado, es imposible obviar que el recurrido admitió en su oposición al recurso, la complejidad de la controversia y la existencia de un acuerdo de pago adelantado y que el 9 de abril de 2021 reclamó una deuda de $6,281 972.77 por los servicios del año 2018.

Triple-S tiene derecho a que el procedimiento se convierta en ordinario. La tramitación del caso al amparo de la Regla 60, *supra,* privaría a la aseguradora de las garantías mínimas del debido proceso de ley. La peticionaria estaría impedida de presentar una

reconvención y descubrir prueba para demostrar que ambas partes acordaron facturar por años de servicio y no por paciente, que pagó algunas facturas y que otras no proceden, y que es el recurrido quien tiene una deuda con Triple-S.

La peticionaria, además, manifiesta la necesidad de que se consoliden todos los pleitos presentados por el recurrido. La aseguradora tiene razón. El TPI no realizó un análisis ponderado de la totalidad de las circunstancias que existen en los casos cuya consolidación solicita. La consolidación procede porque en todos los pleitos el denominador común es el método de facturación acordado por las partes. Todos esos casos comprenden cuestiones comunes de hecho o de derecho que ameritan la consolidación. La complejidad de la controversia es otro factor para ordenar la consolidación. La controversia es complicada porque está basada en los miles de facturas que el recurrido pretender cobrar por sus servicios. La consolidación evitaría la multiplicidad de pleitos entre el Centro Médico y Triple-S sobre el proceso de facturación, la existencia de una deuda y su cuantía. Además, evitaría las órdenes y decisiones inconsistentes sobre dicho asunto y los gastos o dilaciones innecesarias para las partes y el tribunal. Por consiguiente, la consolidación también lograría una resolución justa, rápida y económica, ya que evitaría la multiplicidad de pleitos. Tampoco existen indicios de que la consolidación ocasione un perjuicio real al recurrido.

**IV**

Por lo antes expuesto, se expide el recurso, se revoca al TPI y se ordena la conversión del caso al procedimiento ordinario y la consolidación.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones